UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

UNITED STATES OF AMERICA

v.                                          Case No. 3:24-CR-40-CCB-SJF

JORDAN BOWERS

## OPINION AND ORDER

Based on his plea, Defendant Jordan Bowers has been found guilty of knowingly

possessing a machinegun in violation of 18 U.S.C. § 922(o) and § 924(a)(2). (ECF 1, 28).

In preparation for sentencing, a Presentence Investigation Report ("PSR") was

completed, to which Mr. Bowers filed several objections. (ECF 36, 40). The Court

received evidence and heard argument on the objections from the parties at an

evidentiary hearing and now resolves the objections. (ECF 50).

I.    RELEVANT BACKGROUND—OFFENSE CONDUCT

Mr. Bowers's conviction arose from an incident at his mother's home in South

Bend, Indiana shortly before 8:00 p.m. on January 23, 2024. Mr. Bowers resided at his

mother's home with other family members. Mr. Bowers had gathered with several

family members and friends at the residence on January 23, 2024. Mr. Bowers was

outside the home and had his Glock 23 .40 caliber pistol equipped with a machinegun-

conversion device ("Glock switch") with him. A car driven by an unknown individual

passed the house once. The car returned and passed a second time. On that second pass,

shots were fired at Mr. Bowers's residence from the car. Mr. Bowers fired back at the car using his Glock 23 with the switch affixed.

The shooting was captured on a neighbor's video system. Officers arrived on scene shortly thereafter having been alerted by the ShotSpotter system, which recorded the sound of 20 rounds being fired followed by 8 rounds then another 1 round. Mr. Bowers's residence, a neighbor's house, and two cars parked nearby were damaged by the gunfire. In Mr. Bowers's driveway, officers found spent 40-caliber bullet casings.

As part of the investigation into the shooting, the South Bend Police executed a search warrant on Mr. Bowers's mother's house. During the search, they recovered the loaded Glock 23 with the Glock switch affixed and two handguns under a mattress in Mr. Bowers's alleged bedroom in the basement. In July 2024, Mr. Bowers was arrested for unlawful possession of a machinegun.

In the meantime, Mr. Bowers had participated in a noncustodial interview with investigators on March 5, 2024. At that interview, the investigators inquired about marijuana they observed in Mr. Bowers's waistband, which led Mr. Bowers to describe his marijuana use over the course of at least the last two to three years.

## II.    MR. BOWERS'S OBJECTIONS TO THE PSR

### A.    Base Offense Level—Prohibited Person (PSR Paragraphs 15, 20)

Mr. Bowers objects to a base offense level of 20, as proposed in the PSR and supported by the Government, on the grounds that he was not a prohibited person within the meaning of the law on the day of the offense.

The Sentencing Guidelines provide for a base offense level of 20 for a defendant:

(1) whose offense involved a firearm described in 26 U.S.C. § 5845(a); and (2) who was a "prohibited person" at the time he committed the offense. U.S.S.G. § 2K2.1(a)(4)(B)(i)(II), (ii)(I). A "prohibited person" includes "any person described in 18 U.S.C. § 922(g) or § 922(n)." *Id.* § 2K2.1 app. n.3. Section 922(g)(3) makes it unlawful for any person "who is an unlawful user of or addicted to any controlled substance" to possess a firearm. Marijuana is a Schedule I controlled substance. 21 U.S.C. §§ 802(6), 812(c)(10). An "unlawful user," as used in section 922(g)(3), is "one who regularly or habitually ingests a controlled substance in a manner other than as prescribed by a physician." *United States v. Cook*, 970 F.3d 866, 874 (2020) (citing *United States v. Yancey*, 621 F.3d 681, 682 (7th Cir. 2010) (per curiam)).

Paragraph 15 of the PSR explains that Mr. Bowers is a prohibited person because he possessed a machinegun and was a regular user of marijuana at the time of the offense. (ECF 36 at 5). Paragraph 8, to which Mr. Bowers does not object, describes his non-custodial interview with investigators on March 5, 2024, in which the investigators noticed a small amount of marijuana near Mr. Bowers's waistband. (*Id.* at 3). When asked about it, Mr. Bowers stated that he had been smoking marijuana "probably like two-three times, probably two days out [of] the week and then on the weekends" for three years. (*Id.*). One investigator testified at the evidentiary hearing and confirmed this sequence of events at the March 2024 interview.

Despite admitting his marijuana use contemporaneous with his possession of the machinegun in January 2024, Mr. Bowers argues that he does not qualify as a

"prohibited person" because the Government has not, and cannot, prove that he knew he was an "unlawful user" of a controlled substance under Section 922(g)(3). In support, Mr. Bowers relies on *Rehaif v. United States*, 588 U.S. 225 (2019) and *United States v. Cook*, 970 F.3d 866, 883–84 (7th Cir. 2020). *Rehaif* establishes that "in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." 588 U.S. at 237. Applying *Rehaif*, the court in *Cook* required proof of the defendant's knowledge of his status as an "unlawful user" to support a conviction under Section 922(g)(3). 970 F.3d at 874.

Neither *Rehaif* nor *Cook* discusses the knowledge requirement vis-à-vis the prohibited-person enhancement in the Sentencing Guidelines. In fact, sentencing decisions by district courts across the country have been affirmed based on factual findings that the defendant was an admitted drug user at the time of the convicted offense without any mention that the defendant knew his drug use was unlawful. *See, e.g.*, *United States v. Wilson*, 979 F.3d 889 (11th Cir. 2020); *United States v. Glinn*, 863 F.3d 985 (8th Cir. 2017); *United States v. Marceau*, 554 F.3d 24 (1st Cir. 2009); *United States v. Snipe*, 515 F.3d 947 (9th Cir. 2008); *United States v. McCowan*, 469 F.3d 386 (5th Cir. 2006); *United States v. Wallace*, 461 F.3d 15 (1st Cir. 2006). Mr. Bowers has presented no authority to warrant an expansion of the holdings of *Rehaif* and *Cook* in this case either. As a result, the Government need not prove that Mr. Bowers knew he was an "unlawful user" of a controlled substance under Section 922(g)(3) for him to qualify as a "prohibited person" for sentencing purposes. Mr. Bowers's admission to the

investigators on March 5, 2024, establishes that he was regularly using marijuana in January 2024 at the same time he possessed the machinegun that led to his instant conviction. This alone qualifies Mr. Bowers as an "unlawful user" under 18 U.S.C. § 922(g)(3), which in turn warrants application of the "prohibited person" enhancement to the calculation of his base offense level.

Yet the record also includes statements from Mr. Bowers about his marijuana use to the probation officer on October 17, 2024, during his presentence interview. (ECF 36 at 13). As Paragraph 63 of the PSR reflects, Mr. Bowers told the probation officer that he tried marijuana for the first time at age 13; that he had last used marijuana on the day of his arrest in July 2024; and that he used "marijuana daily and multiple times throughout the day prior to his arrest." (*Id.*). Mr. Bowers neither disputes that he made these comments to the probation officer nor suggests that his comments were untruthful. Rather, Mr. Bowers argues that his truthful statements to the probation officer about his marijuana use should not be used in sentencing to increase his guidelines range.

Mr. Bowers contends that using his presentence statements to the probation officer to enhance his guidelines range is inconsistent with the intent of Congress in enacting 18 U.S.C. § 3153(c)(1), which provides for confidentiality of an accused's statements to a pretrial services officer before a bail determination. Such pretrial confidential information "is not admissible on the issue of guilt in a criminal judicial proceeding" in most circumstances. *Id.* § 3153(c)(3). Section 3153 embodies the distinction between the probation officer as an extension of the court, not an agent of the Government in its prosecutorial role. *See United States v. Jackson*, 886 F.2d 838, 844

(7th Cir. 1989). Indeed, Congress enacted Section 3153 to ensure that the court receives the most accurate information for pretrial bail determinations without affecting defendants' rights. *See United States v. Chaparro*, 956 F.3d 462, 475 (7th Cir. 2020).

Mr. Bowers asks this Court to extend the protections in Section 3153(c)(1) to information gathered on the Court's behalf by the probation officer in preparation for sentencing. He even implies that he might not have been so candid about his marijuana use if he had known it could increase his guidelines range. Despite Mr. Bowers's concerns, however, the probation officer has no authority to determine the facts and fashion an appropriate sentence, including a guidelines calculation; only the judge can do that. *See Jackson*, 886 F.2d at 844. And Mr. Bowers's right against self-incrimination, protected by Section 3153, is not implicated by the probation officer's presentence substance abuse questions or the answers to those questions in October 2024. Furthermore, the plain language of Section 3153 limits its application to pretrial information. Congress could have protected post-conviction information similarly but did not. Mr. Bowers presents no evidence or legal authority to establish Congressional intent for extending the protections of Section 3153 to post-conviction, presentence information like that he provided to the probation officer in October 2024.

Additionally, 18 U.S.C. § 3661 expressly authorizes the Court to consider all information it receives "concerning the background, character, and conduct of a person convicted of an offense . . . for the purpose of imposing an appropriate sentence." No limitations on the scope of relevant information are placed on the Court. *Id.*; *see also United States v. Rosengard*, 949 F.2d 905, 909 (7th Cir. 1991) ("When a defendant tells all

6

in order to benefit from acceptance of responsibility, he runs the risk of incurring further punishment for what he reveals."). The law therefore does not prohibit the probation officer from sharing information from the presentence interview in the PSR. And Mr. Bowers points to no authority preventing the Court from considering his October 2024 statements about his marijuana use to the probation officer.

Mr. Bowers's argument for equitable estoppel fares no better. He asserts that he provided truthful answers about his marijuana use to the probation officer because the probation officer told him no questions would be asked about his offense, and his truthful answers changed his guidelines range for the worse. A party must, at a minimum, demonstrate the traditional elements of an estoppel when asserting such against the Government. *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 59 (1984). The record includes no evidence that the probation officer told Mr. Bowers that his answers to any questions in the presentence interview would not negatively affect the guidelines calculation proposed by probation or adopted by this Court. There was thus no misrepresentation of fact from which to establish estoppel.

Therefore, Mr. Bowers's objection to paragraphs 15 and 20 in the PSR related to his status as a "prohibited person" for purposes of defining his base offense level is overruled.

## B.    Multiple Firearms Enhancement (PSR Paragraphs 7, 15, 21)

Paragraph 15 of the PSR explains that two levels were added to Mr. Bowers's base offense level because he possessed three firearms at the time of the shooting at his residence on January 23, 2024. (ECF 36 at 5). Officers removed three firearms from

7

underneath the mattress in Mr. Bowers's bedroom when investigating the shooting. (*Id.* at 3, ¶ 7). One of the firearms was the machinegun that Mr. Bowers has pleaded guilty to unlawfully possessing. The other two were handguns.

Guideline 2K2.1(b)(1)(A) provides for a two-level increase in a defendant's base offense level if the offense involved 3–7 firearms. Application Note 5 to Guideline 2K2.1(b)(1) indicates that the district court should "count only those firearms that were unlawfully sought to be obtained, unlawfully possessed, or unlawfully distributed" when determining the number of firearms involved in an offense. The Court must also consider relevant conduct, especially how many firearms were possessed as "part of the same course of conduct or common scheme or plan as the offense of conviction." *Id.* § 1B1.3(a)(2); *see also United States v. Ghiassi*, 729 F.3d 690, 694 (7th Cir. 2013); *United States v. Santoro*, 159 F.3d 318, 321 (7th Cir. 1998); *United States v. Rios*, Case No. 3:20-CR-91 JD, 2021 WL 3616159, at *1 (N.D. Ind. Aug. 16, 2021). Relevant conduct "includes all firearms that [Mr. Bowers] unlawfully possessed in the course of his criminal conduct [(i.e., unlawful possession of a machinegun)], not merely guns that were in his possession at the time of his arrest." *Rios*, 2021 WL 3616159, at *1 (citing *United States v. Barbour*, 191 F. App'x 471, 474 (7th Cir. 2006) (finding no error in counting firearms possessed within ten months of the defendant's arrest for the instant offense as part of the same course of conduct)).

Relevant conduct includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and . . . that occurred during the commission of the offense of conviction, in preparation for

that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1)(A). "[S]olely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, [relevant conduct could also include] all acts and omission described in subdivisions (1)(A) . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction." *Id*. § 1B1.3(a)(2).

The Government has the burden to prove, by a preponderance of the evidence, the number of firearms involved in an offense. *United States v. Birk*, 453 F.3d 893, 899 (7th Cir. 2006). "The sentencing court may consider relevant evidence regardless of whether such evidence is admissible under the Federal Rules of Evidence so long as the information has a sufficient indicia of reliability to support its probable accuracy." *Id.* (internal quotations omitted). The burden shifts back to the Government if the defendant presents evidence creating "real doubt" as to the accuracy of the facts relied upon by the Government. *United States v. Black*, 636 F.3d 893 (7th Cir. 2011).

Here, Mr. Bowers objects to the two-level multiple firearms enhancement arguing that the two handguns were not unlawfully possessed and were not involved in the offense for which Mr. Bowers has been adjudged guilty. The Government advocates for the two-level enhancement arguing that Mr. Bowers was a prohibited person at the time he possessed the machinegun making his possession of the two handguns unlawful. The Government also contends that Mr. Bowers hid the machinegun underneath his mattress on January 23, 2024, "in an attempt to avoid detection or responsibility for the offense." (ECF 39 at 4). On these facts, the

Government concludes that the firearms were "sufficiently connected" to be appropriately considered relevant conduct for sentencing purposes.

As already determined, Mr. Bowers was a prohibited person at the time of his offense of conviction in January 2024 based on his unlawful use of marijuana. Therefore, for purposes of sentencing, it was unlawful under 18 U.S.C. § 922(g)(3) for him to possess any firearm. The next question is whether Mr. Bowers's unlawful possession of the two handguns qualifies as relevant conduct under U.S.S.G. § 1B1.3. If it is, the two handguns would need to be counted as firearms involved in his offense of conviction, which would in turn lead to application of the multiple firearms enhancement in determining his offense level.

The Government argues that Mr. Bowers unlawfully possessed the two handguns "in the course of attempting to avoid detection or responsibility for" his offense of conviction—unlawful possession of a machinegun, and as "part of the same course of conduct" as his offense of conviction. *See* U.S.S.G. § 1B1.3(a)(1)(A), (a)(2). In support, the Government contends in a conclusory fashion that the only explanation for the guns being found under Mr. Bowers's mattress is that he hid them there. Yet the record includes no evidence of why they were placed there. In other words, the record lacks evidence that Mr. Bowers was trying to hide the guns or otherwise avoid detection or responsibility for possessing a machinegun and therefore does not link the handguns to Mr. Bowers's offense of conviction. The fact-dependent analysis of whether Mr. Bowers's possession of the two handguns qualified as part of the same

course of conduct as his offense of conviction, however, does support finding the two handguns to be "sufficiently connected" to constitute relevant conduct.

Offenses may "qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." *Id.* § 1B1.3 app. n.5(B)(ii). Factors to consider when determining whether an offense is "sufficiently connected or related" to the offense of conviction include "degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." *Id.* "When one of the above factors is absent, a stronger presence of at least one of the other factors is required." *Id.*

To start, both unlawful possession of a machinegun and unlawful possession of handguns require possession of firearms making Mr. Bowers's offenses similar but distinctive. Possession of the machinegun is unlawful because of the nature of the firearm while possession of the two handguns is unlawful here because of Mr. Bowers's status as an unlawful user of marijuana.

Mr. Bowers's possession of firearms also appears to be a regular activity. Just over a year before the three firearms at issue here were recovered in January 2024, Mr. Bowers was convicted as a juvenile for dangerous possession of a firearm that was found during a traffic stop in December 2022. (ECF 36 at 8–9, ¶ 36). The officer observed the firearm—a Glock 19 9mm pistol—"located directly under the driver's seat[,] positioned as if it had been in the right hand and placed there with the barrel facing the rear of the vehicle." (*Id.* at 9). Not unlike a machinegun, the firearm Mr. Bowers

possessed at that time was more dangerous than a simple handgun because it was equipped with a red dot sight and green laser attachment. (*Id*.). Then within about 13 months of that conviction, the machinegun and handguns were found under his mattress.

There was no time interval between Mr. Bowers's unlawful possession of the machinegun and the possession of the two handguns. They were all recovered at the same time, in the same location as part of the search following the January 2024 shooting.

On these facts, it appears that Mr. Bowers's unlawful possession of the handguns under his mattress in January 2024 is "sufficiently connected or related" to his contemporaneous unlawful possession of a machinegun to be "part of a single episode, spree, or ongoing series of offenses." *See* U.S.S.G. § 1B1.3(a)(2). Yet Mr. Bowers has implied that he did not possess at least one of the handguns found under his mattress. At the evidentiary hearing, the defense presented the Court with a receipt showing that his mother had purchased one of the handguns. No one disputes that Mr. Bowers's mother purchased, or even owned, the handgun. But ownership and possession are not the same thing.

> [P]ossession "may be either actual or constructive and it need not be exclusive but may be joint . . . . Actual possession exists when a tangible object is in the immediate possession or control of the party. Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object."

*United States v. Morris*, 349 F.3d 1009, 1014 (7th Cir. 2003) (quoting *United States v. Garrett*, 903 F.2d 1105, 1110 (7th Cir. 1990)). Actual and constructive possession may be proved by either direct or circumstantial evidence. *See id.*

Even assuming Mr. Bowers did not own the handgun his mother purchased, its location under his mattress implies that he had at least constructive possession of it. After all, he has not disputed that the guns were found under the mattress in his bedroom. At the evidentiary hearing, however, defense counsel suggested the possibility that firearms were not found in Mr. Bowers's bedroom.

Defense counsel questioned paragraph 7 of the PSR, which identified the room where the three firearms were recovered as Mr. Bowers's bedroom. In support, counsel alluded to unspecified statements by Mr. Bowers's mother in a mitigation video filed shortly before the hearing. An officer who searched the house also testified at the hearing that a small bed, maybe a toddler bed, was in the basement near the room where the firearms were recovered. While the record is unclear who was living in the house at the time of the shooting, counsel suggested that the officer's testimony could mean that it was Mr. Bowers's brother and toddler nephew who occupied the basement bedroom, not Mr. Bowers. Counsel then solicited testimony from one of the officers at the hearing regarding a utility bill in Mr. Bowers's name found near the mattress where the guns were located implying that his mother paid that bill.

Despite counsel's attempts at the hearing, however, the defense did not present a preponderance of evidence to corroborate these theories that the firearms were not recovered from Mr. Bowers's bedroom. In fact, the Government submitted an exhibit at

the hearing that included audio where Mr. Bowers confirmed to investigators during their March 2024 interview that he "stays in the basement" where the guns were found. Without more, any doubt that the defense may have created as to whether the guns were found in Mr. Bowers' bedroom is overcome by Mr. Bowers's own statements about the guns being found in his bedroom in the basement. *See Black*, 636 F.3d at 897. Therefore, any objection to references to Mr. Bowers's bedroom in paragraph 7 of the PSR is overruled.

That said, the focus on the bedroom distracts from the relevant facts. No matter whose bedroom it was, the machinegun Mr. Bowers has admitted he possessed was found under a mattress alongside the two handguns. Mr. Bowers had control over the machinegun and necessarily would have knowingly had power to exercise control over the two handguns in the same location. Therefore, Mr. Bowers had constructive possession of the two handguns regardless of who owned either handgun or whose bedroom the firearms were located.

Thus, the Government has established by a preponderance of the evidence that Mr. Bowers's possession of the two handguns was sufficiently related to his possession of the machinegun to be considered part of the same course of conduct. *See* U.S.S.G. § 1B1.3, app. n.5(B)(ii). Mr. Bowers's offense of conviction involved his unlawful possession of the machinegun as well as the relevant conduct of unlawfully possessing the two handguns recovered from under the mattress. With a total of three firearms involved in Mr. Bowers's offense of conviction, the two-level, multiple firearms enhancement is properly applied in determining his base offense level under Guideline

2K1.1(b)(1). Accordingly, Mr. Bowers's objection to the multiple firearms enhancement discussed in paragraphs 15 and 21 of the PSR is overruled.

### C.    Enhancement for Use of Firearm in Connection with Another Felony (PSR Paragraphs 6, 15, 22)

Mr. Bowers objects to application of the four-level enhancement for possessing the machinegun in connection with the separate felony offense of criminal recklessness as incorporated into his guidelines calculation in paragraphs 15 and 22 of the PSR. Mr. Bowers argues that the enhancement should not apply because he acted in self-defense when he shot the machinegun outside his residence on January 23, 2024. Mr. Bowers also objects to the description of the offense conduct as presented in paragraph 6 of the PSR. Mr. Bowers's offense conduct is undisputedly relevant to whether he used the machinegun in connection with another felony offense. Therefore, his paragraph 6 objection will be addressed first.

### 1.    Offense Conduct

Mr. Bowers argues that paragraph 6 characterizes the passing car and the exchange of gunshots in a misleading way while the Government agrees with the representation in paragraph 6. Paragraph 6 states:

> While Bowers was outside his home, an unknown individual drove by in a car and fired several shots at the residence. After the car passed the house, Bowers used the Glock .40 caliber pistol with the switch attached to fire back in the direction of the car. The shooting occurred in a residential neighborhood and was captured on a neighbor's video.

(ECF 36 at 3).

The record before the Court, including the video of the incident played during the evidentiary hearing, shows that a white car passed Mr. Bowers's residence twice that night—once when it stopped for a few seconds in front of the house before driving past and a second time shortly thereafter. On the second pass, an unknown individual in the car fired several shots at the house where Mr. Bowers and others were standing outside without stopping the car. Mr. Bowers fired the Glock .40 caliber pistol with the switch attached in the direction of the car within seconds of the gunshots from the car but after the car passed the house and was no longer firing.

Therefore, Mr. Bowers's objection to paragraph 6 of the PSR is sustained in part. Paragraph 6 is modified as follows:

> While Bowers was outside his home, a white car drove past the residence stopping for a few seconds in front of the house. The car returned a short time later. On the second pass, an unknown individual in the car fired several shots at the residence where Bowers and others were standing. Within seconds of the gunshots from the car, Bowers fired the Glock .40 caliber pistol with the switch attached in the direction of the car after it passed the house and was no longer firing. The shooting occurred in a residential neighborhood and was captured on a neighbor's video.

### 2.    Claim of Self-Defense

U.S.S.G. § 2K2.1(b)(6)(B) requires an increase of four levels in a defendant's base offense level if he "used or possessed any firearm or ammunition in connection with another felony offense." Under Indiana law, a person is guilty of felony criminal recklessness if he "recklessly, knowingly, or intentionally performs an act that creates a substantial risk of bodily injury to another . . . while armed with a deadly weapon." Ind. Code § 35-42-2-2(a), (b)(1)(A). Yet "a person is justified in using deadly force and does

16

not have a duty to retreat if the person reasonably believes that force is necessary to prevent serious bodily injury" to himself or another person. Ind. Code § 35-41-3-2(c) (effective April 25, 2019, to June 30, 2024).

When self-defense is asserted and supported by the evidence, the prosecution has the burden to negate it beyond a reasonable doubt. *Moore v. State*, 181 N.E.3d 442, 445 (Ind. Ct. App. 2022); *Lambert v. State*, 306 N.E.2d 115, 119–20 (Ind. Ct. App. 1974). If Mr. Bowers were found to have acted in self-defense, he could not be guilty of criminal recklessness, and the Section 2K2.1(b)(6)(B) enhancement would not apply. *Cf. United States v. Price*, 16 F.4th 1263, 1265–66 (7th Cir. 2021) (noting that the Section 2K2.1(b)(6)(B) enhancement would apply if a person was convicted of illegally possessing a revolver and used the same revolver to shoot into a house).

The prosecution can negate a claim of self-defense "by rebutting the defense directly, by affirmatively showing the defendant did not act in self-defense, or by simply relying upon the sufficiency of its evidence in chief." *Miller v. State*, 720 N.E.2d 696, 700 (Ind. 1999). The prosecution meets this burden by producing evidence that the defendant initially acted in self-defense but then continued to use deadly force when it was no longer required. *Hughes v. State*, 153 N.E.3d 354, 362 (Ind. Ct. App. 2020).

To establish that he had to right of self-defense on the day of the shooting in January 2024, Mr. Bowers must prove that he "(1) was in a place he had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm." *Moore*, 181 N.E.3d at 446. All parties agree that Mr. Bowers did not fire the first shots on the day of the instant offense. Nor is

there any dispute that he had every right to be at his home when the shooting occurred. And no party suggests that Mr. Bowers provoked the gunfire from the passing white car or that his fear of death or great bodily harm to himself or others nearby when the shots were fired toward him and his home was unreasonable. Therefore, Mr. Bowers was entitled to use deadly force in self-defense that day. The question remains, however, whether Mr. Bowers's right of self-defense was extinguished before he started or finished shooting his machinegun in response to the gunfire from the white car.

The *Hughes* court provides helpful perspective on when the right of self-defense is extinguished. In *Hughes*, the Indiana Court of Appeals affirmed a jury verdict that the defendant was guilty of criminal recklessness. 153 N.E.3d at 357–58. The defendant was walking out of a Walmart store with his girlfriend when two men began pursuing them in the parking lot. *Id.* at 357. When one of the men fired a gun at the defendant, he fired back and shot him. *Id.* After being shot, the man hobbled and crawled back into the store as the defendant continued to pursue him, firing his gun until the injured man was inside the store. *Id.* at 357-58. The court held that firing multiple shots undercuts a claim of self-defense once a defendant disables the purported aggressor. *Id.* at 362. Thus, the court concluded that the defendant's self-defense claim was negated. *Id.*

Here, the video of the shooting shows the relevant sequence of events during the second pass of the white car. For seven seconds, the car is seen driving by Mr. Bowers's residence with several gunshots coming from the car. By the 8-second mark, the car has passed Mr. Bowers's home and is no longer visible on the video. After approximately two seconds of silence, additional rounds of gun fire are heard over the next two

seconds. After six more seconds of silence, Mr. Bowers can be seen walking into his driveway and firing a gun in the general direction of the car. This is consistent with the testimony of two officers at the hearing that they found spent, .40 caliber casings in the road and in Mr. Bowers's driveway. Mr. Bowers affirmed this interpretation of events in his statement to law enforcement during a *Mirandized* interview after his arrest in July 2024 when he said, "I probably didn't even hit the car because I shot late as hell. Like if you watch the footage, I shot late as hell." (ECF 39 at 6–7 (citing Bates 478 at 22:10–22:27)).

Nothing suggests that Mr. Bowers disabled the unknown shooter, like the *Hughes* defendant did, when he fired in the direction of the car. At the same time, the video does show that Mr. Bowers was shooting even after the car had passed and no shots were being fired in his direction. In other words, Mr. Bowers was shooting his machinegun in a residential neighborhood at night after the risk to him, those with him, and his home had ended. Thus, even if he initially acted in self-defense, his late shots were made after the threat had ended extinguishing his right of self-defense for those shots. *See Hughes*, 153 N.E.3d at 362. Mr. Bowers's late shots with the machinegun in the direction of the car that had already passed were reckless, if not knowing or intentional, and created a substantial risk of bodily injury or death to bystanders near his home that night. As a result, Mr. Bowers's conduct amounted to criminal recklessness with a deadly weapon under Indiana law. *See* Ind. Code § 35-42-2-2. Mr. Bowers's objection to paragraphs 15 and 22 of the PSR is thus overruled, and the four-level enhancement for

possession in connection with another felony offense is properly applied in determining

Mr. Bowers's offense level.

     **D.    Remaining Objections (PSR Paragraphs 30, 85, 86, 93, 96, 103, 105)**

Mr. Bowers's objections to paragraphs 30, 85, 86, and 96 of the PSR are all

grounded in the assumption that the Court would sustain his objections and thereby

change his base offense level. As the relevant objections were overruled, Mr. Bowers's

base offense level reflected in the PSR has not changed. Accordingly, his objections to

paragraphs 30, 85, 86, and 96 are overruled.

As stated at the evidentiary hearing, Mr. Bowers's objections to paragraphs 93,

103, and 105 of the PSR will be addressed as part of the Section 3553(a) factor analysis at

the sentencing hearing.

**III.    CONCLUSION**

For the reasons discussed above, Defendant Jordan Bowers's objections to

- Paragraphs 7, 15, 20, 21, 22, 30, 85, 86, and 96 of the Presentence

  Investigation Report (ECF 36) are **OVERRULED**;

- Paragraph 6 of the Presentence Investigation Report (ECF 36) is

  **SUSTAINED IN PART** and **MODIFIED** as follows:

> While Bowers was outside his home, a white car drove past
> the residence stopping for a few seconds in front of the
> house. The car returned a short time later. On the second
> pass, an unknown individual in the car fired several shots at
> the residence where Bowers and others were standing.
> Within seconds of the gunshots from the car, Bowers fired
> the Glock .40 caliber pistol with the switch attached in the
> direction of the car after it passed the house and was no

longer firing. The shooting occurred in a residential neighborhood and was captured on a neighbor's video.

and

- Paragraphs 93, 103, and 105 of the Presentence Investigation Report (ECF 36) are **TAKEN UNDER ADVISEMENT** to be addressed at the sentencing hearing now scheduled for **July 30, 2025**, at **1:30 p.m. (Eastern time)**. Supplemental sentencing memoranda are due no later than **July 16, 2025**.

SO ORDERED on April 14, 2025.

  /s/ *Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT